MATTHEW D. WILSON *et al.*, Plaintiffs-Appellants, v. COOK COUNTY *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—08—1202

Opinion filed August 19, 2009.—Rehearing denied September 25, 2009.

Eric Swanson, of Joliet, Patrick Cummings, of Ciardelli & Cummings, of Chicago, Victor D. Quilici, of River Grove, and Edward Ronkowski, of Mokena, for appellants.

Anita Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Paula A. Castiglione, and Marilyn Fusco Schlesinger, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

This appeal arises from the dismissal of plaintiffs Matthew D. Wilson, Troy Edhlund, and Joseph Messineo's amended complaint seeking declaratory judgment and injunctive relief against defendants

Cook County, the Cook County commissioners, and Cook County Sheriff Tom Dart. Specifically, plaintiffs sought a declaration that the Blair Holt Assault Weapons Ban (Cook County Ordinance No. 06—O—50 (November 14, 2006), amending Cook County Code of Ordinances §54—211 *et seq.* (eff. January 1, 1994)) (Ordinance) was unconstitutional. On April 29, 2008, the trial court dismissed the plaintiffs' first amended complaint pursuant to section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 2006). The trial court found that: (1) the Ordinance is not unconstitutionally vague or overbroad; (2) plaintiffs did not state a cause of action for violation of the due process and equal protection clauses; (3) the Ordinance did not violate article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, §22) or the second amendment of the United States Constitution (U.S. Const., amend. II); and the county properly exercised its police powers in enacting the Ordinance.

Plaintiffs timely filed this appeal and arranged their arguments into seven issues. Plaintiffs' first two arguments involve the application of the United States Supreme Court's holding in *District of Columbia v. Heller*, 554 U.S. 570, 171 L. Ed. 2d 637, 128 S. Ct. 2783 (2008). Plaintiffs argue that *Heller* virtually overruled authority relied on by the trial court. Plaintiffs contend that their facial challenge to the Ordinance on due process and equal protection grounds was sufficient to withstand defendants' motion to dismiss. Plaintiffs also argue that the *Heller* Court found that the second amendment provides a fundamental right to bear arms. They contend that this right must be incorporated into the fourteenth amendment and applied to the states. For the following reasons, we affirm the trial court's dismissal of plaintiffs' complaint.

## I. BACKGROUND

The Ordinance was originally enacted in 1993 by the Cook County Board of Commissioners (Commissioners) as the Cook County Deadly Weapons Dealer Control Ordinance to ban certain assault weapons and assault ammunition. Cook County Ordinance No. 93—O—37 (eff. January 1, 1994). In the prefatory clauses, the Commissioners cited to the public health, safety, and welfare concerns caused by both assault weapons and guns in general. The Ordinance set forth several supporting facts, including: 1,000 of the 4,500 trauma cases handled by Cook County Hospital that year were due to gunshot wounds; there were more federally licensed gun dealers in Cook County than gas stations; an estimated 1 in 20 high school students had carried a gun in the prior month; and assault weapons are 20 times more likely to be used in the commission of a crime than other kinds of weapons. In ad-

dition, the Commissioners stated that there was no legitimate sporting purpose for the military-style assault weapons used on the streets.

Prior to its effective date, the Ordinance was amended to remove the prohibitions on the sale, transfer, acquisition, or possession of assault ammunition. Cook County Ordinance No. 93—O—46 (amended November 16, 1993). The Ordinance prohibited the sale, transfer, acquisition, ownership, or possession of assault weapons, defined as 1 of a list of 60 types or models of high capacity, rapid-fire rifles or pistols. The Ordinance required any owners of the defined assault weapons to remove them from Cook County or modify or surrender them to the Cook County sheriff within 14 days of the enactment. Failure to comply with the Ordinance would result in criminal penalty including a fine and possible imprisonment.

The Ordinance was amended again in 1999 to modify sections not at issue in this appeal; however, additional prefatory language was included to support the ban as necessary in order to protect the public welfare by reducing violent crime and the huge costs associated with those crimes. The Commissioners indicated that the revisions were based not only on the prolific black-market sales of weapons, but those by licensed dealers. The Commissioners cited undercover investigations and studies conducted by Cook County, the City of Chicago, the Cook County State's Attorney's Office, and the Bureau of Alcohol, Tobacco and Firearms, which indicated that weapons utilized in the commission of crimes are traced to licensed gun dealerships. Cook County Ordinance No. 99—O—27 (amended November 23, 1999).

On November 14, 2006, the Ordinance was amended to apply to both assault weapons and large capacity magazines and expand the list of banned weapons and definition of those weapons. In addition, the time period for removal, surrender, or rendering inoperable was expanded from 14 to 90 days. Cook County Ordinance No. 06—O—50 (amended November 14, 2006). The Ordinance was also amended in 2007 to change the name to the Blair Holt Assault Weapons Ban. Cook County Ordinance No. 07—O—36 (adopted June 19, 2007).

As for the specific provisions, section 54—211 of the Ordinance provides definitions of assault weapon, detachable magazine, large capacity magazine, muzzle brake and muzzle compensator. Cook County Code of Ordinances §54—211 (eff. January 1, 1994). The definition of "assault weapon" contains six subcategories that provide physical characteristics of semiautomatic rifles, pistols and shotguns, as well as conversion kits that are banned as assault weapons. Cook County Code of Ordinances §§54—211(1) through (6) (eff. January 1, 1994). The seventh subcategory contains a nonexhaustive list of

banned rifles, pistols and shotguns, and copies or duplicates of these models. Cook County Code of Ordinances §54—211(7) (eff. January 1, 1994).

Plaintiffs filed the instant cause of action as law-abiding residents of Cook County. Each plaintiff indicated that he had never been convicted of a crime, had a properly issued firearm owner's identification card, and legally purchased guns that were subject to the Ordinance's ban. Plaintiffs indicated the guns were owned as part of collections, for self-defense, or for recreational purposes. This appeal followed the trial court's dismissal of plaintiffs' complaint pursuant to section 2—615 of the Code of Civil Procedure.

## II. ANALYSIS

A motion to dismiss under section 2—615 of the Code of Civil Procedure challenges the legal sufficiency of a complaint based on facial defects of the complaint. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 413 (2004). This court conducts a *de novo* review of a trial court's ruling on the sufficiency of a motion to dismiss. *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 342 (2005). While allegations in the complaint are viewed in a light most favorable to the plaintiff, the decision to dismiss a case may be affirmed on any basis contained within the record. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 196 (1999). We begin with a discussion of the holding in *Heller* and then address plaintiffs' arguments in turn.

### A. *District of Columbia v. Heller*

The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *Heller*, the Supreme Court considered the District of Columbia's handgun ban that "totally bans handgun possession in the home." *Heller*, 554 U.S. at 628, 171 L. Ed. 2d at 679, 128 S. Ct. at 2817. The ban required that any lawful firearm in the home be either disassembled or rendered inoperable by a trigger lock. *Heller*, 554 U.S. at 628, 171 L. Ed. 2d at 679, 128 S. Ct. at 2817. Both the majority and the dissent embarked on extensive reviews of the history and meaning of the second amendment in coming to opposite conclusions regarding the original meaning and understanding of the amendment.

For our purposes, only the conclusions of the majority's original-meaning originalist review are important. First, the majority found that the original understanding of the amendment was grounded in the belief that the right to bear arms ensured not only that a militia could easily be formed if needed, but inherently that it provided protection from tyranny. *Heller*, 554 U.S. at 599-600, 171 L. Ed. 2d at 661-

62, 128 S. Ct. at 2801-02. The majority concluded that it was also popularly understood as an individual right to self-defense—unconnected to militia service—particularly to the defense of one's home and hearth. *Heller*, 554 U.S. at 600-19, 171 L. Ed. 2d at 662-73, 128 S. Ct. at 2802-12.

Looking to precedents covering the second amendment, the Court concluded that its holding that an individual right to self-defense was not foreclosed. In *United States v. Cruikshank*, 92 U.S. 542, 23 L. Ed. 588 (1876), *Presser v. Illinois*, 116 U.S. 252, 29 L. Ed. 615, 6 S. Ct. 580 (1886), and *Miller v. Texas*, 153 U.S. 535, 38 L. Ed. 812, 14 S. Ct. 874 (1894), the Court did not examine the meaning or scope of the second amendment, but held that the amendment could be infringed by Congress and that the states were free to restrict or protect the right under their police powers. *Heller*, 554 U.S. at 619-20, 171 L. Ed. 2d at 674-75, 128 S. Ct. at 2812-13. In what has been cited as a telling piece of foreshadowing, the majority's discussion of *Cruikshank* includes a footnote where the majority states that the question of incorporation was not presented in the case, but adds that *Cruikshank* also held that the first amendment did not apply against the states without inquiry mandated by later cases. *Heller*, 554 U.S. at 620 n.23, 171 L. Ed. 2d at 674 n.23, 128 S. Ct. at 2813 n.23.

Next, the majority found that *United States v. Miller*, 307 U.S. 174, 83 L. Ed. 1206, 59 S. Ct. 816 (1939), relied on heavily by the dissent, also did not foreclose its conclusion of an individual right. The *Miller* decision was the closest the Court had come to examining the scope of the second amendment when it determined that the second amendment right was a collective right that applied to weapons traditionally used by a well-regulated militia. The *Miller* Court found that, in the absence of evidence showing that a sawed-off shotgun bore a reasonable relationship to the preservation of the militia, there was no right to keep and bear that type of weapon. *Miller*, 307 U.S. at 178, 83 L. Ed. at 1209, 59 S. Ct. at 818. Therefore, based on the *Miller* Court's finding that this certain type of weapon could be freely regulated, the *Heller* Court found that *Miller* stood for the proposition that the right extended only to certain types of weapons. Despite a consensus of case law interpreting the right as being a collective one, the Court concluded that *Miller* did not find that the second amendment right was not an individual right. *Heller*, 554 U.S. at 623-24, 171 L. Ed. 2d at 676, 128 S. Ct. at 2814-15.

Therefore, applying the original meaning analysis and the precedents, the Court held that the second amendment provides the individual right to bear arms typically possessed by law-abiding citizens for lawful purposes, such as self-defense. *Heller*, 554 U.S. at 599-600,

625, 171 L. Ed. 2d at 661-62, 677, 128 S. Ct. at 2801-02, 2815-16. The Court concluded that the ban at issue amounted to a prohibition of an entire class of arms that was "overwhelmingly" accepted and properly utilized for self-defense purposes by the general population. *Heller*, 554 U.S. at 628, 171 L. Ed. 2d at 679, 128 S. Ct. at 2817. As such, the District of Columbia's ban was found unconstitutional. *Heller*, 554 U.S. at 628-35, 171 L. Ed. 2d at 679-84, 128 S. Ct. at 2817-22.

It is important to note that the Court explicitly understood and stated that this was the Court's first in-depth analysis of the second amendment and that "one should not expect it to clarify the entire field." *Heller*, 554 U.S. at 635, 171 L. Ed. 2d at 683, 128 S. Ct. at 2821. Along those lines, the opinion allowed that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by [a nonexhaustive list of categories such as] felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27, 171 L. Ed. 2d at 678, 128 S. Ct. at 2816-17. Also, as noted above, in footnote 23, the Court noted that the incorporation question was not at issue and it did not disturb *Cruikshank*, *Presser*, or *Miller v. Texas*. Finally, the Court stated in footnote 27 that all gun bans would easily pass the rational basis test. *Heller*, 554 U.S. at 628 n.27, 171 L. Ed. 2d at 679 n.27, 128 S. Ct. at 2817 n.27. However, it also declined to enumerate any standard for the review of whether gun control legislation is unconstitutional. *Heller*, 554 U.S. at 634-35, 171 L. Ed. 2d at 682-83, 128 S. Ct. at 2821. These matters were clearly left for future, and certain, litigation. *Heller*, 554 U.S. at 634-35, 171 L. Ed. 2d at 683, 128 S. Ct. at 2821.

## B. The Scope of *Heller* and the Incorporation Doctrine

Accordingly, on its own, the holding in *Heller* does not support plaintiffs' argument that Cook County may not violate their second amendment rights by banning assault weapons. *Heller* involved a regulation by the District of Columbia, which is ultimately controlled by Congress and not a sovereign entity like the states. Plaintiffs argue that "*Heller* clearly enunciates the 'fundamental right' to keep and bear arms," and consequently, statutes restricting that right are subject to strict scrutiny review. Citing *Heller*, 554 U.S. at 591-92, 171 L. Ed. 2d at 651, 657, 128 S. Ct. at 2791, 2797. While both cited pages refer to the right as an "individual right," neither page uses the word "fundamental." Further, as defendants argue, *Heller* specifically refused to make a declaration that the right to keep and bear arms is subject to strict scrutiny review. Therefore, defendants argue that the assault weapons ban at issue falls within the allowable restrictions the

*Heller* majority conceded were constitutional and that incorporation is not only improper, but would not invalidate the ban.

As to which firearms are protected by the second amendment, the *Heller* majority said:

> "The 18th-century meaning [of 'arms'] is no different than the meaning today. \*\*\*

> The term was applied, then as now, to weapons that were not specifically designed for military use and were not employed in a military capacity. \*\*\*

> \*\*\* Just as the First Amendment protects modern forms of communications, *e.g., Reno v. American Civil Liberties Union*, 521 U.S. 844, 849[, 138 L. Ed. 2d 874, 883, 117 S. Ct. 2329, 2334] (1997), and the Fourth Amendment applies to modern forms of search, *e.g., Kyllo v. United States*, 533 U.S. 27, 35-36[, 150 L. Ed. 2d 94, 103, 121 S. Ct. 2038, 2044] (2001), the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 581-82, 171 L. Ed. 2d at 651, 128 S. Ct. at 2791-92.

The Court further explained:

> "We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. \*\*\*

> \* \* \*

> We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' " *Heller*, 554 U.S. at 625-27, 171 L. Ed. 2d at 677-78, 128 S. Ct. at 2815-17, quoting *Miller*, 307 U.S. at 179, 83 L. Ed. 2d at 1209, 59 S. Ct. at 818.

Finally, the Court noted that "It may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause." *Heller*, 554 U.S. at 627, 171 L. Ed. 2d at 679, 128 S. Ct. at 2817. We need not reach whether the restrictions recognized by *Heller* apply to the county ordinance at issue because we find that *Heller* does not support plaintiffs' argument that the second amendment is incorporated to be applicable to the states through the fourteenth amendment.

While, as noted above, the *Heller* majority implied that the clock is ticking on the question of whether the second amendment applies to the states through incorporation, it explicitly refused to overrule precedent on that issue. This issue of incorporation has been covered

by a host of federal courts that were faced with challenges to gun control measures immediately following *Heller*. Most recently, the Seventh Circuit Court of Appeals considered and rejected the argument that the second amendment must be incorporated into the fourteenth amendment and applied to the states. *National Rifle Ass'n of America, Inc. v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009) (*NRA*).

In *NRA*, the plaintiffs challenged the City of Chicago's and Village of Oak Park's handgun bans as unconstitutional under *Heller*. The district court dismissed the complaints on the ground that *Heller* involved a law enacted under the authority of the federal government, not a subordinate of a state. *NRA*, 567 F.3d at 857. The Seventh Circuit affirmed, noting that despite the majority's hint, and building scholarship, the holdings of *Cruikshank, Presser*, and *Miller* may be ripe for review as "fossils," but the founding principle for the cases announced in the "*Slaughter-House Cases*" (*Butcher's Benevolent Ass'n v. Crescent City Live Stock Landing & Slaughter-House Co.*, 83 U.S. 36, 21 L. Ed. 394 (1873)), remains controlling precedent. *NRA*, 567 F.3d at 857-58. The court stated that the Supreme Court has maintained consistency in holding that the lower courts should follow directly controlling cases and leave to the Supreme Court the prerogative of overruling its own decisions. *NRA*, 567 F.3d at 857-58. Specifically, the *NRA* court stated:

> "Repeatedly, in decisions that no one thinks fossilized, the Justices have directed trial and appellate judges to implement the Supreme Court's holdings even if the reasoning in later opinions has undermined their rationale. 'If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.' *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 104 L. Ed. 2d 526, 536, 109 S. Ct. 1917, 1921-22 (1989). *Cruikshank, Presser*, and *Miller* have 'direct application in [this] case.' Plaintiffs say that a decision of the Supreme Court has 'direct application' only if the opinion expressly considers the line of argument that has been offered to support a different approach. Yet few opinions address the ground that later opinions deem sufficient to reach a different result. If a court of appeals could disregard a decision of the Supreme Court by identifying, and accepting, one or another contention not expressly addressed by the Justices, the Court's decisions could be circumvented with ease. They would bind only judges too dim-witted to come up with a novel argument." *NRA*, 567 F.3d at 857-58.

The *NRA* court noted that in *Quilici v. Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982), it followed the approach that the second amendment did not apply to the states and that the Second Circuit followed that decision in *Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009), a post-*Heller* decision. Accordingly, the court rejected the Ninth Circuit's decision to ignore these cases and apply the "selective incorporation" approach followed in *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009). In *Nordyke*, the Ninth Circuit conducted its own review of the history of the second amendment and determined that the right enunciated in *Heller* is a fundamental right. Following *Duncan v. Louisiana*, 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444 (1968) (extending the right to a jury trial in criminal cases to the states), the *Nordyke* court found the right subject to incorporation under the due process clause of the fourteenth amendment. *Nordyke*, 563 F.3d at 447-57. Even with this finding, the *Nordyke* court found the Alameda County ordinance banning firearms and ammunition on municipal property was not a meaningful impediment to the plaintiffs' rights, but a permissible restriction as discussed in *Heller. Nordyke*, 563 F.3d at 460.

We agree with the *NRA* court's holding and find that plaintiffs' argument here also must fail. *Heller* does not stand for the creation of a broad fundamental right. The *Heller* Court explicitly refused to address the incorporation issue. As the *NRA* court held, if the *Slaughter-House Cases* and following line of cases are to be overruled, that is a matter for the United States Supreme Court, and not this court, to undertake.

### C. Effect of *Heller* on Cases Relied on by the Trial Court

Plaintiffs also assert that *Heller* overruled Illinois and federal precedent relied on by the trial court in dismissing the complaint because it found the second amendment right was a fundamental right. More specifically, plaintiffs attack *Quilici* and *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483 (1984). In both of these cases, the plaintiffs unsuccessfully challenged an ordinance of the Village of Morton Grove banning handguns. Based on the analysis of *Heller* above, these arguments must also fail.

The *Quilici* court held that the ordinance was properly directed at protecting the safety of residents and a valid exercise of police power under the Illinois Constitution. *Quilici*, 695 F.2d at 269. The court also found that, despite *Presser*'s tenuous support, it remained valid precedent and the second amendment did not apply to the states. *Quilici*, 695 F.2d at 270. In *dicta*, "for the sake of completeness," the court commented that, under the plain meaning of the second amend-

ment and the holding in *Miller*, the amendment is "inextricably connected" to the maintenance of a well-regulated militia and the right to keep and bear handguns was not guaranteed. *Quilici*, 695 F.2d at 270-71.

*Kalodimos* involved consideration of the meaning and scope of the Illinois constitutional provision concerning the right to bear arms. Our supreme court considered whether the handgun ban was permissible under the home rule power and police power. *Kalodimos*, 103 Ill. 2d at 490. The Illinois Constitution provides: "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, §22. The court noted that discrepancies with the second amendment were purposefully intended to broaden the scope of a collective right, as widely understood under *Miller*, applicable only to traditional militia arms to an "*individual* right covering a wider variety of arms." (Emphasis added.) *Kalodimos*, 103 Ill. 2d at 491. Consequently, while *Heller* was the first pronouncement by the United States Supreme Court that the right to keep and bear arms was an individual right, this has been the law in Illinois since *Kalodimos*.

However, this expanded right was explicitly limited in the Illinois Constitution by the inclusion of "the police power." Ill. Const. 1970, art. I, §22. The *Kalodimos* court concurred with *Quilici* in finding that the ban on a discrete category of firearms was a reasonable response to the stated public welfare concerns. *Kalodimos*, 103 Ill. 2d at 498. The court also noted that, unlike the design of the first amendment to encourage the propagation and dissemination of views and ideas, the second amendment was designed not to encourage or discourage gun possession, but simply to protect from the confiscation of all arms. *Kalodimos*, 103 Ill. 2d at 499.

Plaintiffs again argue that the *Heller* Court determined that the second amendment affords a fundamental right and, as such, effectively overrules *Kalodimos* and *Quilici*. Plaintiffs argue that both of these cases allowed for the destruction and erosion of that right and merely employed rational basis scrutiny to the ban. They offer that it is obvious that if *Heller* preceded these cases, the courts would have utilized a strict scrutiny test, under which the ban "fails miserably." Again, this argument is dependent upon plaintiffs' overbroad reading of *Heller* and application of case law involving fundamental rights.

As we held above, *Heller* did not announce that the second amendment right is a fundamental right. We agree with the *NRA* court that only the Supreme Court may change its holdings. Similarly, our supreme court recently held, "we note that the one-act, one-crime doctrine was established by this court in [*People v.*] *King* [, 66 Ill. 2d

551 (1977)]. The appellate court lacks authority to overrule decisions of this court, which are binding on all lower courts. See *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551-52 (1983). Thus, presentation of an argument by the State in the appellate court urging the abandonment of the one-act, one-crime doctrine would have been futile." *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Accordingly, we do not hold that *Heller* overruled *Kalodimos*. *Kalodimos* remains the law in Illinois and the individual right to keep and bear arms in Illinois is subject to the police power.

### D. Vagueness, Overbreadth and Due Process

Plaintiffs next argue that the Ordinance is so vague and overbroad that it must be stricken generally and also as violating due process. Plaintiffs contend that the language of the Ordinance is overbroad and it reaches protected categories as announced in *Heller*. Plaintiffs contend that no evidence was provided to support defendants' claim that firearms for hunting, recreational use and protection were allowed. Conversely, plaintiffs argue that their pleadings fully demonstrated that commonly used firearms were banned and that the Ordinance violates due process due to being unconstitutionally vague. Plaintiffs argue that the trial court's citation to cases defining the overbreadth doctrine as applying only to protected rights are meaningless because of *Heller*. Plaintiffs note that these arguments are very similar, in fact, intertwined, but dispute the trial court's statement that they are simply the same argument.

The overbreadth doctrine was judicially created as an extraordinary tool to protect first amendment rights from the chilling effect of an overbroad statute. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 436 (2006). Under this doctrine, the challenger to a statute has the burden of proving that substantial overbreadth exists based on the text of that particular law and facts as well as proving that a substantial amount of protected conduct is impacted. *Pooh Bah*, 224 Ill. 2d at 437, 442. However, as defendants argue, even if plaintiffs could prove this, Illinois courts have not recognized this doctrine outside of the first amendment context. *People v. Greco*, 204 Ill. 2d 400, 407 (2003). Further, plaintiffs' assertion that it should be applied in this case in light of *Heller* also fails. As described above, *Heller* did not pronounce the second amendment right as fundamental. Accordingly, plaintiffs' overbreadth argument fails as the second amendment right does not enjoy the same protection provided the first amendment.

Plaintiffs also argue that the Ordinance is so vague, arbitrary, and capricious in its content and enforcement that it violates due process.

Plaintiffs assert that the Ordinance may be found impermissibly vague, even if it does not reach protected conduct, if it does not establish sufficient enforcement standards. *Kolender v. Lawson*, 461 U.S. 352, 358, 75 L. Ed. 2d 903, 909, 103 S. Ct. 1855, 1858 (1983). Plaintiffs claim that they established before the trial court that the list of banned firearms and other definitions are vague and, as a result, they cannot determine whether certain firearms are banned. They contend that the inclusion of "copies" or "duplicates" does not provide any clarity or eliminate the vagueness of the Ordinance, but adds to the confusion as to what firearms are actually banned. Plaintiffs also argue that the Ordinance lacks guidelines for enforcement. Therefore, under plaintiffs' theory that *Heller* requires that the strict scrutiny test and not the rational basis test must be applied, they conclude that the trial court erred in applying case law under the rational basis analysis in dismissing their challenge of the Ordinance.

Defendants argue that laws are presumed to be constitutional and a reviewing court must construe laws to affirm constitutionality whenever reasonably possible. *People v. Einoder*, 209 Ill. 2d 443, 450 (2004). They add that a statute may be unconstitutional as too vague only if it fails to provide a person of ordinary intelligence a reasonable opportunity to understand what it prohibits or if it allows arbitrary and discriminatory enforcement. *Pooh Bah*, 224 Ill. 2d at 442. Plaintiffs argue that the ordinance is void on its face. As our supreme court has explained, "a statute is normally not unconstitutional on its face unless it provides no standard of conduct at all, *i.e.*, the ambiguity is so pervasive that it is incapable of any valid application. [Citations.] Facial challenges to legislation are generally disfavored." *Pooh Bah*, 224 Ill. 2d at 442.

In the instant case, the trial court reviewed and detailed the Ordinance's specific list of weapons and detailed definitions of what constitutes an assault weapon and these constituted objective criteria for enforcement. Consequently, we agree with defendants that plaintiffs did not state a cause of action to support a facial due process challenge of the Ordinance. We agree with the trial court that the terms "copies" and "duplicates" in the Ordinance are not vague, but have plain and ordinary meanings. Furthermore, the important consideration on a vagueness review is whether the Ordinance provided specific standards such that a person of ordinary intelligence could understand the prohibitions and it could be properly enforced. Defendants admit that the Ordinance is broadly drawn, and it is, but that does not make it impermissibly vague. While there may not be perfect clarity in the wording, the broad language serves the legitimate purpose of protecting the public. Because *Heller* did not mandate

strict scrutiny review, or any level of review, the trial court properly found that plaintiffs did not state a cause of action based on the plain meaning and adequate detail provided in the Ordinance.

### E. Equal Protection Claim

Plaintiffs next contend that the Ordinance violates the equal protection clause of the fourteenth amendment. Plaintiffs argue that the Ordinance treats similarly situated persons differently based on the type of firearms owned. Plaintiffs conclude that, because the second amendment right is a fundamental right, examination of the claim that disparate treatment of similarly situated persons requires more than the rational basis analysis utilized by the trial court.

Citing *Nordlinger v. Hahn*, 505 U.S. 1, 10, 120 L. Ed. 2d 1, 12, 112 S. Ct. 2326, 2331 (1992), the trial court noted that not all classifications are barred by the equal protection clause. Rather, the equal protection clause "simply keeps governmental decision[-]makers from treating differently persons who are in all relevant respects alike." *Nordlinger*, 505 U.S. at 10, 120 L. Ed. 2d at 12, 112 S. Ct. at 2331. Also, if a fundamental right or suspect class is not involved, the classification only need further a legitimate state interest. *People v. Farmer*, 165 Ill. 2d 194, 207-08 (1995). Suspect classifications include race, national origin, sex and illegitimacy. *People v. Botruff*, 212 Ill. 2d 166, 176-77 (2004). Assault weapons owners do not comprise a suspect classification.

While plaintiffs are correct that the second amendment is an individual right, the regulation of these particular firearms clearly furthers a legitimate government interest under *Kalodimos*. The Ordinance provides a nonexhaustive list of weapons, and the copies or duplicates of those weapons that are banned. Importantly, the Ordinance also provides further specific guidelines and attributes to determine what types of weapons are covered. Accordingly, we reject plaintiffs' contention that we should use the strict scrutiny test in this case. Considering plaintiffs' complete failure to allege any facts that two owners of similar firearms would be treated differently under the rational basis test, the trial court properly dismissed plaintiffs' equal protection claim.

### F. Waiver

Finally, the trial court also considered in detail plaintiffs' argument that the Ordinance failed to provide a *scienter* requirement and whether the Ordinance violates article I, section 22, of the Illinois Constitution. Defendants argue that plaintiffs forfeited these arguments on appeal for failing to raise the issues under Rule 341(h)(7). 210 Ill. 2d R. 341(h)(7). Plaintiffs respond that they appealed the

entire dismissal order, the trial court discussed the *scienter* issue extensively for four pages and they fully argued the Illinois Constitution before the trial court. Plaintiffs claim that they "clearly addressed" these issues by arguing that *Kalodimos* was overruled, citing to the Illinois Constitution in the appendix to their brief, and asserting the trial court misconstrued their arguments on the *scienter* issue.

Plaintiffs do not raise these issues on their own merits or provide authority to support their arguments. We will not conduct research or provide arguments for parties. Failure to establish the facts and authority for an argument supports a finding that an issue is waived under Rule 341. *Feret v. Schillerstrom*, 363 Ill. App. 3d 534, 541 (2006). Plaintiffs' only mention of our constitution is with respect to the argument involving *Kalodimos* as addressed above. Likewise, plaintiffs' only mention of this issue is limited at best. In one sentence on page 14 of their brief, they claim that the trial court "clearly misconstrued Plaintiffs['] arguments regarding *Staples v. U.S.*, 511 U.S. 600 (1993), as it distinguished *U.S. v. Freed*, 401 U.S. 601 (1971)," followed by citation to the amended complaint and court order in the record. No discussion of the issue or these cases or any analysis to support the contention that the court erred is provided. Plaintiffs' one-sentence statement is inadequate, and their failure to provide support or analysis of these issues constitutes waiver pursuant to the rules of our court.

## III. CONCLUSION

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

QUINN and COLEMAN, JJ., concur.