*In re* S.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. S.M., a Minor, Respondent-Appellant).

First District (5th Division)   No. 1—01—2462

Opinion filed March 31, 2004.

Michael J. Pelletier and Samuel Algozin, both of State Appellate Defender's Office, of Chicago, for appellant.

622

Richard A. Devine, State's Attorney, of Chicago (Gerald Nora, Assistant State's Attorney, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Respondent, S.M., appeals the finding of delinquency based on his unlawful possession of a firearm. Respondent contends: (1) the unlawful possession of firearms statute violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11); (2) the unlawful possession of firearms statute violates the due process clause; (3) the State failed to prove him guilty beyond a reasonable doubt of unlawful possession of a firearm; and (4) the trial court erred during sentencing. We affirm the finding of delinquency and modify S.M.'s dispositional order.

We adopt the defendant's statement of facts, verbatim:

"On December 13, 2000, Officer David Seaquist and a team of five or six officers from the Summit Police Department executed a search warrant at the address 6215 S. 75th Avenue. The name of S.M.'s father, S.M. Sr., was listed on the warrant. The search warrant was to be executed in order to search for drugs and money. Seaquist testified that he personally knew S.M., and knew that S.M. was recently released from juvenile boot camp. Officer Weyer testified that he had arrested S.M. on an earlier occasion and knew that S.M. was on parole.

The officers knocked on the rear door prior to entering the house. After knocking on the door, the officers entered the house, using a battering ram to break the door in. The officers shouted 'Summit Police' upon entering the house. Approximately 10 people were inside the house. When they entered, the officers were on the middle floor of the house. Seaquist stated that once the police entered the house, he went upstairs, following Officer Venzon. Seaquist also testified on cross-examination that the bedroom was on the middle floor of the house.

Officer Venzon entered one of the bedrooms, while Seaquist stayed outside the room, near the doorway. Several people were in the room, including S.M. S.M. was on a bed inside the bedroom.

Seaquist testified that the standard procedure was for the officers to take the individuals out of the room one at a time, conduct pat down searches, and place the individuals in handcuffs. S.M. was the second person removed from the bedroom. Seaquist stated that as S.M. was coming out of the bedroom, a gun was in 'plain view' sticking out of his pants. Seaquist testified that he conducted a pat down search of S.M. and recovered a pistol. On separate occasions during his testimony, Seaquist testified that the gun was both unloaded and loaded.

Seaquist also testified that in executing the search warrant, he found cocaine in a leather jacket hanging in the closet of the bedroom. At the probable cause hearing the day following the arrest, Officer Weyer testified that Seaquist stated that the cocaine was recovered during a custodial search of S.M.'s person. Officer Weyer confirmed this at the delinquency hearing.

Seaquist testified that after he recovered the gun, either he or Officer Weyer inventoried the gun. The inventory sheet for the gun, filled out by the officers, did not indicate that the gun was recovered from the person of S.M., and did not indicate the name of the owner of the gun.

Seaquist also testified that the gun could be concealed, and that he determined S.M. was under the age of 18."

Following the delinquency hearing, the court found S.M. delinquent on the basis of unlawful possession of a firearm, adjudged S.M. a ward of the court, and committed him to the Department of Corrections. S.M. filed this timely appeal.

First, S.M. argues that his adjudication of delinquency for unlawful possession of a firearm must be reversed because the unlawful possession of firearms statute violates the proportional penalties clause. A statute is presumed to be constitutional, and the party challenging a statute bears the burden of establishing its invalidity. *In re K.C.*, 186 Ill. 2d 542, 550 (1999). Courts have an obligation to construe a statute in such a manner as to uphold its constitutionality if it is reasonable to do so. *People v. Baker*, 341 Ill. App. 3d 1083, 1087 (2003).

Article I, section 11, of the Illinois Constitution, commonly referred to as the proportionate penalties clause, provides in relevant part that: "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. Our supreme court has held that the proportionate penalties clause can be violated in one of three instances: (1) the penalty for an offense is cruel, degrading, or so completely disproportionate to the offense for which it is imposed as to shock the moral sense of the community; (2) the penalty imposed for a given offense is harsher than the penalty for a similar but more serious offense; and (3) the penalties imposed for identical offenses differ. *People v. Davis*, 177 Ill. 2d 495, 503-04 (1997).

In this case, S.M. asserts a violation of the second type, namely, that the penalty for the offense of unlawful possession of a firearm is more severe than that imposed for a more serious offense, the unlawful use of weapons.

The unlawful possession of firearms statute states:

"(a) A person commits the offense of unlawful possession of firearms or firearm ammunition when:

(1) He is under 18 years of age and has in his possession any

firearm of a size which may be concealed upon the person[.]'' 720 ILCS 5/24—3.1(a)(1) (West 2000).

A person under the age of 18 convicted of possessing a handgun in violation of the unlawful possession of firearms statute commits a Class 4 felony. 720 ILCS 5/24—3.1(b) (West 2000).

■ The unlawful use of weapons statute states:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

* * *

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card[.]'' 720 ILCS 5/24—1(a)(4) (West 2000).

A person convicted of violating section 24—1(a)(4) of the Criminal Code of 1961 commits a Class A misdemeanor. 720 ILCS 5/24—1(b) (West 2000).

S.M. contends that a 17-year-old found on the streets carrying an unloaded handgun, capable of concealment, may be charged with unlawful possession of a firearm and face punishment as a Class 4 felony offender. S.M. contends that if that same 17-year-old is found on the streets with a loaded and concealed handgun he may be charged with unlawful use of a weapon and face punishment only for the violation of a Class A misdemeanor. S.M. argues that the carrying of a loaded handgun in a public area creates a more serious threat to the public health and safety than the carrying of an unloaded handgun. Yet, under these two statutory provisions, the more serious threat results in less severe punishment.

■ Our supreme court has explained that when a defendant raises a proportionality challenge to a statute based upon a lesser penalty imposed for a similar but allegedly more serious offense, the court must apply a two-step cross-comparison analysis. *People v. Lombardi*, 184 Ill. 2d 462, 475 (1998). First, the court must consider whether the offenses being compared share a common statutory purpose. If the offenses do not have common or related purposes, a comparative proportionality review is inappropriate. This is so because, when

statutes defining criminal offenses are enacted for different purposes, we will presume that the legislature considered different factors in determining the appropriate penalties for the offenses and will defer to its judgment in this regard. *Lombardi*, 184 Ill. 2d at 475-76. However, if the purposes of the two offenses are related, the court must then determine whether the offense with the harsher penalty is more serious than the offense with the lesser penalty. *Lombardi*, 184 Ill. 2d at 475-76.

■ Accordingly, we begin our analysis by determining whether the legislature had a common or related purpose in enacting the unlawful use of weapons and unlawful possession of firearms statutes. The plain language of the statute is the best indicator of legislative intent. *People v. Koppa*, 184 Ill. 2d 159, 169 (1998). When a statute is ambiguous, we may look beyond the language as written to discern the legislative intent and consider the purpose of the law, the evils that the law was designed to remedy, and the legislative history. *In re B.C.*, 176 Ill. 2d 536, 542-43 (1997).

■ The unlawful use of weapons statute regulates the possession of weapons "concealed on or about [the] person." 720 ILCS 5/24—1(a)(4) (West 2000). The statute contains no age component and therefore regulates the possession of concealed weapons by the general population. The parties point to no legislative history indicating a contrary intent.

By contrast, the unlawful possession of firearms statute applies only to persons "under 18 years of age [who have in their] possession any firearm of a size which may be concealed upon the person." 720 ILCS 5/24—3.1 (a)(1) (West 2000). The legislative debate surrounding the unlawful possession of firearms statute reveals that the legislative purpose was to remedy the increasing problem of youth gang violence resulting from the possession of handguns. See 88th Ill. Gen. Assembly, Senate Proceedings, December 1, 1994, at 70-72 (statements of Senator Raica). Accordingly, the legislature decided to enhance the penalties for handgun possession by persons under the age of 18 by making such possession a Class 4 felony. See 720 ILCS 5/24—3.1(b) (West 2000).

Thus, the purpose behind the unlawful use of weapons statute was to regulate the possession of concealed weapons by the general public, whereas the purpose behind the unlawful possession of firearms statute was to target youth gang violence by enhancing the penalties for handgun possession by youth. As the statutes have different and distinct purposes, we presume that the legislature considered different factors in establishing the penalties for the respective offenses and defer to its judgment in doing so. *Lombardi*, 184 Ill. 2d at 480.

■ Next, S.M. argues that the unlawful possession of firearms statute violates due process because it requires no culpable mental state and therefore potentially permits a felony conviction based on innocent conduct. We disagree. Where a statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), the court may imply a mental state to satisfy the *mens rea* requirement of the crime. *People v. Wright*, 194 Ill. 2d 1, 29 (2000). Neither party argues that the unlawful possession of firearms is an absolute liability offense; accordingly, we imply a mental state of criminal knowledge to satisfy the *mens rea* element of the crime. Criminal knowledge requires that the offender knowingly possess the gun for a criminal purpose as opposed to possessing the gun for an innocent reason. See *People v. Tolliver*, 147 Ill. 2d 397, 400, 403 (1992). Therefore, S.M.'s due process argument is without merit, as the unlawful possession of firearms statute (with the implied mental state of criminal knowledge) does not permit a conviction based on innocent conduct.

■ Next, S.M. argues that the State failed to prove him guilty beyond a reasonable doubt of unlawful possession of a handgun, because Officer Seaquist's testimony that S.M. was in possession of a handgun was not credible. The State must prove the elements of the substantive offenses alleged in delinquency petitions beyond a reasonable doubt. *In re W.C.*, 167 Ill. 2d 307, 336 (1995). This court will not overturn a trial court's finding of delinquency unless, after reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the offenses beyond a reasonable doubt. *In re W.C.*, 167 Ill. 2d at 336.

S.M. points to various inconsistencies in Officer Seaquist's testimony. It is for the trier of fact to resolve conflicts or inconsistencies in the testimony of witnesses. *People v. Hopkins*, 201 Ill. 2d 26, 41 (2002). Officer Seaquist specifically testified that S.M. was in possession of a handgun at the time of his arrest. The trier of fact obviously believed Officer Seaquist's testimony; we will not substitute our judgment therefor. *Hopkins*, 201 Ill. 2d at 41.

S.M. also argues that the State failed to prove that he was under the age of 18 at the time of the offense. Officer Seaquist testified that he personally knew S.M., that he knew S.M. had been in boot camp and was on parole, and that he knew S.M. was under the age of 18. Officer Seaquist's testimony was sufficient to establish S.M.'s age.

Viewed in the light most favorable to the State, Officer Seaquist's testimony was sufficient to establish that S.M. was in unlawful possession of a handgun. Accordingly, we affirm the finding of delinquency based on the unlawful possession of a handgun.

■ Next, S.M. contends that his dispositional order should be modified to show that the maximum period for which he may remain in the Department of Corrections is three years. Section 5—710(7) of the Juvenile Court Act of 1987 states that "[i]n no event shall a guilty minor be committed to the Department of Corrections, Juvenile Division for a period of time in excess of that period for which an adult could be committed for the same act." 705 ILCS 405/5—710(7) (West 2000). S.M. was found delinquent on the basis of unlawful possession of a handgun, a Class 4 felony. 720 ILCS 5/24—3.1(b) (West 2000). The sentence for a Class 4 felony is not less than one year and not more than three years. 730 ILCS 5/5—8—1(a)(7) (West 2000). Accordingly, we modify S.M.'s dispositional order to show that the maximum period for which he may remain in the Department of Corrections is three years.

S.M. also contends that he should be given 170 days' credit for time served. The State has filed no response disputing S.M.'s contention. Accordingly, we modify S.M.'s dispositional order to reflect 170 days' credit for time served.

Affirmed; dispositional order modified.

REID and HARTIGAN, JJ., concur.