THIRD DIVISION
February 23, 2011

No. 1-09-0840

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO AGUILAR, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justice Murphy concurred in the judgment and opinion.

Justice Neville dissented, with opinion.

**OPINION**

Following a bench trial, defendant was found guilty of one count of aggravated unlawful use of a weapon (AUUW) where defendant knowingly carried a loaded firearm at a time when he was not in his own home or place of business (720 ILCS 5/24-1.6(a)(1),(a)(3)(A) (West 2008)), and one count of unlawful possession of a firearm where defendant was under 18 years of age and possessed a loaded, concealable handgun while he was in the backyard of a friend's home (720 ILCS 5/24-3.1(a)(1) (West 2008)). Defendant was sentenced to 24 months of probation for the AUUW offense and no sentence was imposed for the offense of unlawful possession of a firearm.

On appeal, defendant argued in his brief that both the AUUW statute and the unlawful

possession of a firearm statute violated federal and state guarantees of the individual right to bear arms as applied to him under the United States Supreme Court decision in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008). In *Heller*, the Supreme Court held that the second amendment protects the right to keep and bear arms for the purpose of self-defense in one's home and struck down a District of Columbia law that banned the possession of handguns in the home. After the State filed its response brief but before defendant filed his reply brief, the United States Supreme Court issued its ruling in *McDonald v. City of Chicago,* __ U.S. __, 130 S. Ct. 3020 (2010), which incorporated the Second Amendment right recognized in *Heller* against the states.

On October 5, 2010, this court *sua sponte* issued an order finding that: (1) defendant was convicted of AUUW (720 ILCS 5/24-1.6 (West 2008)) and unlawful possession of a firearm (720 ILCS 5/24-3.1 (West 2008)); (2) the AUUW statute was amended by Public Act 96-742, which took effect on August 29, 2009; and (3) the amended AUUW statute permits a person to carry a loaded firearm "on the land or in the legal dwelling of another person as an invitee with that person's permission" (Pub. Act 96-742 (eff. Aug. 25 2009) (amending 720 ILCS 5/24-1.6 (West 2008))). This court ordered the parties to file supplemental briefs addressing two issues: (1) "[w]hether the amended AUUW statute (720 ILCS 5/24-1.6 (West 2008)) can be applied retroactively to the facts in this case"; and (2) "[w]hether there are any reported cases which have applied the holding in *Heller* [citation] or in *McDonald* [citation] to [a] case involving a defendant convicted of carrying a weapon outside his home."

In his supplemental brief, defendant contends that the amended AUUW statute applies retroactively to the facts of his case where the amendment merely clarified the original intent of

1-09-0840

the statute under which defendant was convicted. In its supplemental brief, the State contends that the amended AUUW statute cannot be applied retroactively to the facts of this case where the legislature specifically provided for an effective date of August 29, 2009, more than a year after the date of defendant's offense. The State notes that in *People v. Dawson*, 403 Ill. App. 3d 499 (2010), this court recently held that the AUUW statute does not violate the constitutional right to bear arms where the decisions in *Heller* and *McDonald* were limited to the right to possess a handgun in the home for self-defense purposes.

For the following reasons, we find that the amended AUUW statute cannot be applied retroactively to this case and even if the amended statute applied, defendant's conviction would stand under the facts of this case. We further find that the AUUW statute does not violate defendant's constitutional right to bear arms under the United States Supreme Court decisions in *Heller* and *McDonald*.

## I. BACKGROUND

At trial, Officer Thomas Harris testified that on the evening of June 12, 2008, he was on surveillance duty near 4217 West 25th Place, in Chicago. Officer Harris observed a group of male teenagers screaming, making gestures, and throwing bottles at passing vehicles. Officer Harris identified defendant as one of the teenagers and testified that defendant was holding the right side of his waist area. Officer Harris testified that he saw defendant and three other individuals walk into an alley and radioed other officers nearby.

Officer John Dolan testified that after receiving radio communication from Officer Harris, he and Officers Wagner and Triantafillo proceeded to 4217 West 25th Place. Officer Dolan testified that he saw several individuals walk into the backyard of that address. The

3

officers entered the backyard. Officer Dolan testified that he heard defendant yell an expletive and saw that defendant had a gun in his right hand. Officer Dolan observed defendant drop the gun to the ground. Officer Dolan took defendant into custody while another officer recovered the gun. When Officer Dolan examined the gun, he discovered that the serial number had been scratched off and there were three live rounds of ammunition loaded in the gun. Officer Dolan testified that he learned that defendant did not live at 4217 West 25th Place.

Defense witness Romero Diaz testified that he lived at 4217 West 25th Place and was friends with defendant. Diaz testified that on the evening of June 12, 2008, he was with defendant and another friend in his backyard waiting for defendant's mother to pick defendant up. Diaz testified that three or four police officers entered his backyard with flashlights and ordered him and his friends to get on the ground. Diaz testified that one of the officers tackled defendant because defendant hesitated to get down on the ground. Diaz testified that he was with defendant in the backyard for 30 to 40 minutes and defendant did not have a gun and did not drop a gun to the ground when the officers entered the backyard.

Defendant testified that on the night of June 12, 2008, he was with friends at the corner of 26th Street and Keeler Avenue, in Chicago. After about 45 minutes at that corner, defendant and another friend walked to Diaz's backyard. Defendant testified that he was waiting for his mother to pick him up when three police officers entered the yard with flashlights and guns drawn. Defendant testified that an officer yelled at him to get on the ground and when defendant moved slowly, one of the officers tackled defendant. Defendant testified that the officers searched the yard, then showed defendant a gun and accused him of dropping the gun. Defendant denied having a gun at any time that evening and denied that he dropped the gun to

4

1-09-0840

the ground.

Upon weighing the credibility of the witnesses, the circuit court found defendant guilty of AUUW and unlawful possession of a firearm. Defendant was sentenced to 24 months' probation on the AUUW charge, but entered no sentence on the charge of unlawful possession of a firearm. Defendant now appeals.

II. ANALYSIS

A. Retroactive Application of Amended AUUW Statute

This court must first determine which version of the AUUW statute applies in this case. At the time of defendant's conviction, the AUUW statute provided in pertinent part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; or

(2) * * *; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense." 720 ILCS 5/24-1.6(a)(1), (a) (3)(A) (West 2008).

The AUUW statute was amended by Public Act 96-742 as follows, in pertinent part:

"(a) A person commits the offense of aggravated unlawful use of a

5

1-09-0840

weapon when he or she knowingly:

>    (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, <u>legal dwelling</u>, or fixed place of business, <u>or on the land or in the legal dwelling of another person as an invitee with that person's permission</u>, any pistol, revolver, stun gun or taser or other firearm[.]" Pub. Act 96-742 (eff. Aug. 25, 2009) (Emphasis Added.)

Accordingly, our legislature amended the AUUW statute to expand the exceptions in subsection 24-1.6(a)(1) to include in his or her "legal dwelling" and when he or she is "on the land or in the legal dwelling of another person as an invitee with that person's permission." Pub. Act 96-742, (eff. Aug. 25, 2009).

Defendant contends that the amended AUUW statute should be treated as a clarification of the original statute, which had been misapplied by this court in *People v. Price*, 375 Ill. App. 3d 684 (2007). In *Price*, this court determined that the defendant was not in his "abode" when he possessed a weapon within the meaning of the AUUW statute, when he was spending the night as a guest at his sister's home. *Price*, 375 Ill. App. 3d at 695. In so holding, this court noted that equating "abode" with " 'overnight living quarters' " could result in "homeowners unwillingly and unwittingly providing safe harbor to any overnight guest who, unbeknownst to them, brings a weapon into their home." *Price*, 375 Ill. App. 3d at 692. Here, defendant argues that because our legislature amended the AUUW statute to provide for the exception when an individual is "on the land or in the legal dwelling of another person as an invitee with that person's permission" soon after the decision in *Price*, this court should conclude that the

6

decision in *Price* misconstrued what the legislature originally intended in the statute. See *People v. Rink*, 97 Ill. 2d 533, 540-41 (1983) ("if an amendment is enacted soon after there were controversies as to the interpretation of the statute it amends, it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute"). However, this court in *Price* correctly based its judgment on the plain meaning of the AUUW statute as written at the time. Our supreme court has explained, "We have never held that a subsequent amendment may replace the plain meaning as the best evidence of the legislature's original intent." *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 231 (2005). In addition, the amendment to the AUUW statute did not contradict this court's interpretation that "abode" did not include "overnight living quarters." Rather, the amendment to the AUUW statute expanded the statute to include a separate exception for "an invitee" with "permission" to carry a handgun .

The State argues that the amended AUUW statute cannot be applied retroactively to this case where the legislature specifically provided for an effective date that was more than a year after the date of the offense. The State further argues that even if the amendment did not expressly preclude retroactive application, the general savings clause in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2008)) prevents retroactive application because the amendment substantively changed the crime of AUUW. We agree that the amendments to the AUUW statute may not be retroactively applied to defendant's conduct predating those amendments.

In *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-39 (2001), the Illinois Supreme Court adopted the retroactivity analysis of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). The court summarized the *Landgraf* test as follows:

> "The threshold inquiry is whether the legislature has expressly prescribed the

temporal reach of a statute. If it has, the expression of legislative intent must be given effect absent a constitutional prohibition. If, however, the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect, keeping in mind the general principle that prospectivity is the appropriate default rule. In making this determination, a court will consider whether retroactive application of the new statute will impair rights a party possessed when acting, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If retrospective application of the new law has inequitable consequences, a court will presume that the statute does not govern absent clear legislative intent favoring such a result." *John Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 405 (2009).

Following the adoption of the *Landgraf* approach, the Illinois Supreme Court considered the effect of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 1998)) on the retroactivity analysis. Section 4, also known as the general savings clause of Illinois, provides:

"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform,

so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2008).

The Illinois Supreme Court held, in *Doe*, "[S]ection 4 is a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not." *Doe*, 234 Ill. 2d at 406. The court further held, "Because section 4 of the Statute on Statutes operates as a default standard, it is inapplicable to situations where the legislature has clearly indicated the temporal reach of a statutory amendment." *Doe*, 234 Ill. 2d at 406.

In the present case, Public Act 96-742 was enacted with an effective date of August 25, 2009. Section 99 of Public Act 96-742 provides "Effective date. This Act takes effect upon becoming law." Pub. Act. 96-742 §99, (eff. Aug. 25, 2009). Section 99 unambiguously indicates the temporal reach of the amendments, *i.e.*, the amendments apply to conduct occurring on or after August 25, 2009. Since the temporal reach of the statutory amendments has been clearly indicated, there is no need to invoke section 4 of the Statute on Statutes. See *Doe*, 234 Ill. 2d at 406-07. Therefore, the amended AUUW statute does not apply to this case, where the incident involving defendant occurred on June 12, 2008, more than a year before the effective date of the statutory amendments.

We note that even if the statutory amendments applied to this case, defendant's conviction would still stand where defendant did not have the requisite permission to possess the gun. The exception to the amended AUUW statute requires an invitee on the land or legal dwelling of another to have "that person's permission." Pub. Act 96-742 (eff. Aug. 25, 2009).

As previously mentioned, in *Price*, this court expressed a concern that a homeowner might "unwillingly and unwittingly" have an overnight guest who "unbeknownst to them" brings a weapon into their home. *Price*, 375 Ill. App. 3d at 692. The State notes that the AUUW's statutory history shows that our legislature considered this court's concern where the words "with permission" were added by the Senate and the House accepted the change to the statutory amendment. Here, Diaz, the owner of the home and yard where defendant was arrested, denied that defendant had a gun. Defendant also denied having a gun on the evening in question. Consequently, it can be inferred that Diaz did not give defendant the requisite "permission" to possess a gun on his land.

### B. Constitutionality of the AUUW Statute

Since we hold that defendant was properly convicted under the AUUW statute, we must consider the constitutionality of the statute. Whether a statute is constitutional is a question of law to be reviewed *de novo*. *People v. Morgan*, 203 Ill. 2d 470, 486 (2003). Because we assume that a statute is constitutional, defendant bears the burden of showing the constitutional violation. *People v. Sole*, 357 Ill. App. 3d 988, 991 (2005). " 'Our duty is to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done.' " *Sole*, 357 Ill. App. 3d at 991 (quoting *People v. McGee*, 341 Ill. App. 3d 1029, 1032 (2003)).

Defendant argues that *Heller* must be read to preclude government interference with an individual's right to bear arms, including outside that individual's home. In support of his argument, defendant points to the majority's discussion of the natural meaning of "bear arms" to be " ' "[to] wear, bear, or carry... upon the person or in the clothing or in a pocket, for the

purpose of being armed and ready for offensive or defensive action in a case of conflict with another person." ' " *Heller*, __ U.S. at __, 128 S. Ct. at 2793 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting, joined by Rehnquist, C.J. and Scalia and Souter, JJ.), quoting Black's Law Dictionary 214 (6th ed. 1998)).

However, the Court's decision in <u>Heller</u> specifically limited its scope: "[W]e hold that the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm *in the home* operable for the purpose of immediate self-defense." (Emphasis added.) *Heller*, __ U.S. at __, 128 S. Ct. at 2821-22. Similarly, the Court's decision in *McDonald* was also constrained, with a plurality of the Court concluding that the right to possess a handgun in the home for self-defense was fundamental and incorporated under the due process clause. *McDonald*, __ U.S. at __, 130 S. Ct. at 3050. The *McDonald* Court refused to expand on the holding in *Heller* that the second amendment protects "the right to possess a handgun in the home for the purpose of self-defense." *McDonald*, __ U.S. at __, 130 S. Ct. at 3050. Therefore, the decisions in *Heller* and *McDonald* were limited to interpreting the second amendment's protection of the right to possess handguns in the home, not the right to possess handguns outside the home. With this in mind, this court ordered additional briefing in this case requesting that the parties address whether any reported cases have applied the holding in *Heller* or *McDonald* "to [a] case involving a defendant convicted of carrying a weapon outside his home."

In examining the constitutionality of the AUUW statute, we must first address the standard of review to apply. The Supreme Court in *Heller* and *McDonald* did not adopt a level

of constitutional scrutiny for evaluating second amendment restrictions. See *Heller*, __ U.S. at __, 128 S. Ct. at 2821 (acknowledging the dissent's criticism of the majority for not adopting a level of scrutiny); see also Ryan L. Card, *An Opinion Without Standards: The Supreme Court's Refusal to Adopt a Standard of Constitutional Review in District of Columbia v. Heller Will Likely Cause Headaches for Future Judicial Review of Gun-Control Regulations*, 23 BYU J.P.L. 259 (2009).

However, the majority rejected the rational basis test, stating that it "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right" such as "the right to keep and bear arms." *Heller*, __ U.S. at __ n.27, 128 S. Ct. at 2817 n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."). Therefore, some form of heightened judicial scrutiny is required.

Defendant contends that strict scrutiny is appropriate where the right to bear arms is a fundamental right. Under the strict-scrutiny standard, courts would examine each gun law closely "to determine whether it is 'narrowly tailored to achieve a compelling governmental interest.' " *Heller*, __ U.S. at __, 128 S. Ct. at 2851 (Breyer, J., dissenting, joined by Stevens, Souter and Ginsburg, JJ. ) (quoting *Abrams v. Johnson*, 521 U.S. 74, 82 (1997)). Courts subjecting a statute to strict scrutiny accord the statute no presumption of constitutionality. *Harris v. McRae*, 448 U.S. 297, 312 (1980). Strict scrutiny is most commonly used when dealing with race-based legislation or classification. *Johnson v. California*, 543 U.S. 499, 505 (2005). The Supreme Court has held that "all racial classifications [imposed by government]...

12

must be analyzed by a reviewing court under strict scrutiny" because "[r]acial classifications raise special fears that they are motivated by an invidious purpose." (Internal quotation marks omitted.) (Emphasis omitted.) *Johnson*, 543 U.S. at 505. Strict scrutiny is also applied by courts when a statute interferes with the exercise of a fundamental right, such as freedom of speech. *Ysursa v. Pocatello Education Ass'n*, __ U.S. __, __, 129 S. Ct 1093, 1098 (2009).

However, the Supreme Court has not held that the right to bear arms under the second amendment should be subject to strict scrutiny. In *Heller*, Justice Breyer, in his dissent, rejected the strict-scrutiny standard for reviewing gun-control regulations and asserted that the majority did the same. Justice Breyer explained that the majority "implicitly, and appropriately, rejects that suggestion by broadly approving a set of laws - prohibitions on concealed weapons, forfeiture by criminals of the Second Amendment right, prohibitions on firearms in certain locales, and governmental regulation of commercial firearm sales-whose constitutionality under a strict scrutiny standard would be far from clear." *Heller*, __ U.S. at __, 128 S. Ct. at 2851 (Breyer, J., dissenting, joined by Stevens, Souter and Ginsburg, JJ.). Justice Breyer's reference is to the section of the majority opinion that states as follows:

> "Like most rights, the right secured by the Second Amendment is not unlimited. *** Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing

13

conditions and qualifications on the commercial sale of arms." *Heller*, __ U.S. at __, 128 S. Ct. at 2816-17.

The majority then identified these laws that limit the right to bear arms as "presumptively lawful regulatory measures." *Heller*, __ U.S. at __ n.26, 128 S. Ct. at 2817 n.26.

Since the majority labeled these laws that limit the right to bear arms as "presumptively lawful regulatory measures," courts are not permitted to impose the higher strict-scrutiny standard to these regulations because under strict-scrutiny these laws would be considered presumptively unlawful. See *Harris*, 448 U.S. at 312.

Justice Breyer also cited a law review article that summarized hundreds of gun-control decisions by the supreme courts of 42 states in which these courts have adopted a standard of review that is more deferential than strict scrutiny. *Heller*, __ U.S. at __, 128 S. Ct. at 2853 (Breyer, J., dissenting, joined by Stevens, Souter and Ginsburg, JJ.) (citing Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683, 687, 716-18 (2007)). If the Supreme Court had intended to overrule the consensus among these courts that the right to bear arms under the second amendment should not be subject to strict scrutiny, the Supreme Court could have explicitly done so.

Various federal courts of appeal have adopted intermediate scrutiny as the proper standard of review to apply to second amendment challenges. In *United States v. Marzzarella*, 614 F. 3d 85 (3d Cir. 2010), the Third Circuit held "the Second Amendment can trigger more than one particular standard of scrutiny," depending upon the type of law challenged and the type of restriction placed upon the Second Amendment. *Marzzarella*, 614 F.3d at 97. The

14

specific statute at issue in *Marzzarella* forbade possession of firearms with obliterated serial numbers (18 U.S.C. §922(k)). The Third Circuit noted that the statute "did not severely limit the possession of firearms," unlike the ban in *Heller*. *Marzzarella*, 614 F.3d at 97. The Third Circuit framed the intermediate scrutiny inquiry as whether the challenged law served a "significant," "substantial," or "important" government interest, and, if so, whether the "fit between the challenged [law] and the asserted objection [was] reasonable, not perfect." *Marzzarella*, 614 F.3d at 98. The Third Circuit upheld section 922(k).

In *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010), the Seventh Circuit sitting *en banc* considered whether 18 U.S.C. §922(g)(9), which prohibits any person "who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing firearms, violated the second amendment. The Seventh Circuit concluded that section 922(g)(9) was subject to intermediate scrutiny inquiry which turned on whether the statute was "substantially related to an important governmental objective." *Skoien*, 614 F.3d at 641. The Seventh Circuit upheld section 922(g)(9).

Recently, the Seventh Circuit applied intermediate scrutiny in two more cases: *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010), upholding a statute barring felons from possessing firearms (18 U.S.C. §922(g)(1)); and *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010), upholding a statute barring narcotics addicts from possessing firearms (18 U.S.C. §922(g)(3)). In *Yancey*, the Seventh Circuit "reserve[d] the question of whether a different kind of firearm regulation might require a different approach." *Yancey*, 621 F.3d at 683.

In *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010), the Fourth Circuit Court of

15

Appeals applied intermediate scrutiny and upheld 18 U.S.C. §922(g)(9), relying on *Marzzarella*. In *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010), the Tenth Circuit Court of Appeals upheld 18 U.S.C. §922(g)(8), which bars persons who are subject to domestic violence orders of protection from possessing firearms. In doing so, the Tenth Circuit relied upon both *Marzzarella* and *Skoien* in applying intermediate scrutiny.

Accordingly, we find intermediate scrutiny to be the appropriate standard in the present case. This court has previously explained that the purpose of the AUUW statute:

> " 'is to allow the State to seek a harsher penalty for any person in the State of
> Illinois who does not fall under a specific exemption from carrying a loaded
> weapon on or about his person or in any vehicle because of the inherent dangers
> to police officers and the general public, even if the person carrying the weapon
> has no criminal objective.' " *Sole*, 357 Ill. App. 3d at 992, (quoting *People v.
> Pulley*, 345 Ill. App. 3d 916, 925 (2004)).

We find that the AUUW statute does not violate defendant's second amendment rights because it is substantially related to this important governmental objective and the fit between the AUUW statute and the governmental objective was reasonable.

We note that prior to *Heller* and *McDonald*, this court had repeatedly rejected contentions that the AUUW statute violates a defendant's due process rights and upheld the constitutionality of the statute under the rational basis test. See *Sole*, 357 Ill. App. 3d at 991; *People v. Austin*, 349 Ill. App. 3d 766 (2004); *People v. Marin*, 342 Ill. App. 3d 716 (2003); *McGee*, 341 Ill. App. 3d at 1032. The State notes that the only case applying *Heller* and

16

*McDonald* to the AUUW statute is this court's recent decision in *Dawson*, 403 Ill. App. 3d 499.

In *Dawson*, this court explained that the *Heller* Court limited its holding to the question presented - "[T]hat the second amendment right to bear arms protected the right to possess a commonly used firearm, a handgun, in the home for self-defense purposes." *Dawson*, 403 Ill. App. at 508 (citing *Heller*, 554 U.S. at \_\_, \_\_\_, 128 S. Ct. at 2801-02, 2815-16). This court further explained: "*Heller* specifically limited its ruling to interpreting the amendment's protection of the right to possess handguns in the home, not the right to possess handguns outside of the home in case of confrontation - a fact the dissent heartily pointed out noting that '[n]o party or *amicus* argued this interpretation; the Court appears to have fashioned it out of whole cloth.' " *Dawson*, 403 Ill. App. 3d at 508 (quoting *Heller*, 554 U.S. at \_\_, 128 S. Ct. 2828 (Stevens, J., dissenting, joined by Souter, Ginsburg and Breyer, JJ.)).

In *Dawson*, this court then noted that *McDonald* also addressed the limited question of whether a ban on the possession of a handgun in the home violated the second amendment right to bear arms. This court explained: "The holding in *McDonald* was similarly constrained with a plurality of the Court concluding that the right to possess a handgun in the home for self-defense was fundamental and incorporated under the due process clause." *Dawson*, 403 Ill. App. 3d at 508 (*McDonald*, \_\_ U.S. at \_, 130 S. Ct. at 3050).

This court determined that the Supreme Court's decisions in *Heller* and *McDonald* do not impact on Illinois's AUUW statute:

> "The AUUW statute specifically excludes possession of a firearm in one's abode
> from its proscriptions, further defining that exclusion with the 2009 amendment

to include one's 'legal dwelling,' and therefore does not implicate the fundamental right to keep and bear arms in one's home for self-defense. The statute simply restricts the public possession of a loaded and accessible firearm on one's person or in one's vehicle. Indeed, section 24-1.6(a)(1) makes it clear that the AUUW statute's proscriptions do not apply to a person 'when on his or her land or in his or her abode or fixed place of business.' 720 ILCS 5/24-1.6(a)(1) (West 2006). Accordingly, the legislature has not only protected the fundamental right at issue, but provided protection beyond that right and defendant's argument that the AUUW statute must be struck down as an unconstitutional restriction on second amendment rights by the State is rejected." *Dawson*, 403 Ill. App. 3d at 511.

In *People v. Williams*, No. 1-09-1667 (Ill. App. Dec. 2010), the Fourth Division of the First District followed *Dawson* in affirming the defendant's AUUW conviction based on carrying a pistol in his pocket as the defendant walked down the street. *Williams*, slip op. at 7.

We continue to adhere to our holding in *Dawson*, where the Supreme Court in *Heller* and *McDonald* specifically limited its rulings to interpreting the second amendment's protection of the right to possess a handgun in the home for self-defense purposes, not the right to possess handguns outside of the home. The Supreme Court's decisions do not define the fundamental right to bear arms to include the activity barred by the AUUW statute. This court ordered the parties to file supplemental briefs addressing whether other courts have issued opinions regarding the applicability of the holdings in *Heller* and *McDonald* to cases involving a

1-09-0840

defendant convicted of carrying a handgun outside his or her home.  The parties' briefs noted

that other state and federal courts have upheld convictions where a defendant was carrying a

handgun outside the confines of his home.  See *Sims v. United States*, 963 A.2d 147 (D.C. 2008);

*Little v. United States*, 989 A.2d 1096 (D.C. 2010); *People v. Flores*, 86 Cal. Rptr. 3d 804 (Cal.

Ct. App. 2008); *State v. Knight*, 241 P. 3d 120 (Kan. Ct. App. 2010); *United States v.*

*Masciandaro*, 648 F. Supp. 2d 779, 786-94 (E.D. Va. 2009); *United States v. Hart*, 726  F. Supp.

2d 56 (D. Mass. 2010).

The state of Maryland has a AUUW statute very similar to our own.  In *Williams v. State*,

No. 16, 2011 WL 13746 (Md. Ct. App. Jan. 5, 2011), the Court of Appeals addressed an almost

identical argument as that presented before us.  The court explained:

> "Williams *** attempts to bring his conviction of wearing, carrying, or
>
> transporting a handgun in public, without a permit, within the ambit of *Heller* and
>
> *McDonald* by claiming that those opinions would prohibit his conviction.  This is
>
> not the case, because *Heller* and *McDonald* emphasize that the Second
>
> Amendment is applicable to statutory prohibitions against home possession, the
>
> dicta in *McDonald* that 'the Second Amendment protects a personal right to keep
>
> and bear arms for lawful purposes, most notably for self-defense within the
>
> home,' notwithstanding.  __ U.S. at __,  130 S. Ct. at 3044, 177 L. Ed. 2d at 922.
>
> Although Williams attempts to find succor in this dicta, it is clear that prohibition
>
> of firearms in the home was the gravamen of the certiorari questions in both
>
> Heller and *McDonald* and their answers.  If the Supreme Court, in this dicta,

19

meant its holding to extend beyond home possession, it will need to say so more plainly.

Williams was convicted of wearing, carrying or transporting a handgun in public, rather than for possession of a handgun in his home, for which he *could not* be prosecuted under Section 4-203(b)(6).  It is the exception permitting home possession in Section 4-203(b)(6) that takes the statutory scheme embodied in Section 4-203 outside of the scope of the Second Amendment, as articulated in *Heller* and *McDonald.*  Section 4-203(b)(6) clearly permits wearing, carrying, or transporting a handgun 'by a person on real estate that the person owns or leases or where the person resides,' without registering or obtaining a permit, wholly consistent with *Heller's* proviso that handguns are 'the most preferred firearm in the nation to keep and use for protection of one's home and family.'  554 U.S. at 628-29, 128 S. Ct. at 1217-18, 171 L. Ed. 2d at 689." (Emphasis in original.) *Id*. at * 8.

No reported cases have held that *Heller* or *McDonald* preclude states from prohibiting the possession of handguns outside of the home.

Here, defendant also argues that the holdings in *Heller* and *McDonald* make clear that the Illinois Constitution must be read in a manner which allows the people of Illinois the right to possess firearms for self-defense.  The Illinois Constitution provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed."  Ill. Const. 1970, art. I, §22.  Defendant acknowledges that in *Kalodimos v. . Village of Morton*

*Grove*, 103 Ill. 2d 483, 498 (1984), our supreme court upheld a city ordinance absolutely prohibiting the possession of handguns. Defendant argues that in *Kalodimos* our supreme court applied a rational basis test to the ordinance prohibiting possession of handguns and, consequently, the holding in *Kalodimos* must be "revisited."

The United States Supreme Court has explained, "While states are, of course, free to provide more protection for the accused than the Constitution requires, see *California v. Ramos*, 463 U.S. 992, 1014 (1983), they may not provide less." *Simmons v. South Carolina*, 512 U.S. 154, 174 (1994) (Souter, J., concurring, joined by Stevens, J.) .

In *Relsolelo v. Fisk*, 198 Ill. 2d 142 (2001), our supreme court held: "We acknowledge *** that we are not bound to interpret our own constitutional provisions [in] lockstep with the Supreme Court's interpretation of the federal constitution. *People v. Mitchell*, 165 Ill. 2d 211, 217 (1995). Indeed, we have often stated that this court may interpret provisions of our state constitution to provide broader protections than their federal constitutional counterparts. [citations.]." *Relsolelo*, 198 Ill. 2d at 149.

We agree with defendant that in light of the holdings in *Heller* and *McDonald*, *Kalodimos*' interpretation of section 22 of article I of the Illinois Constitution appears to provide less protection than does the second amendment. This having been said, only our supreme court may change its holding: "The appellate court lacks authority to overrule decisions of this court which are binding on all lower courts." *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Accordingly, we must decline defendant's invitation to "revisit" *Kalodimos*. See *Wilson v. Cook County*, 394 Ill. App. 3d 534, 544 (2009).

1-09-0840

C.  Defendant's Challenge to the Unlawful Possession of Firearms Statute

Defendant challenges the constitutionality of the unlawful possession of firearms statute (720 ILCS 5/24-3.1(a)(1) (West 2008)), arguing that under Heller, the statute infringes on his second amendment right to bear arms.  However, we find that we cannot review defendant's conviction for unlawful possession of a firearm because the trial court did not impose sentence.  "Absent a sentence, a conviction is not a final and appealable judgment." *People v. Baldwin*, 199 Ill. 2d 1, 5 (2002).  Defendant, citing *People v. Dixon*, 91 Ill. 2d 346 (1982), argues that if this court were to grant defendant relief on his AUUW conviction, this court has authority to reach defendant's appeal of his conviction for unlawful possession of a firearm because the State can seek remand for sentencing on that remaining conviction.

In *Dixon*, the defendant was convicted of armed violence, aggravated battery, mob action, and disorderly conduct, but only sentenced on the armed violence and aggravated battery convictions because the trial court held that the other offenses merged into the armed violence and aggravated battery offenses.  The appellate court reversed the armed violence conviction, affirmed the aggravated battery conviction, and refused to remand for sentencing on the unsentenced convictions for mob action and disorderly conduct.  *Dixon*, 91 Ill. 2d at 349.  The Illinois Supreme Court held that the appellate court had the authority to remand the cause for sentencing on the unsentenced convictions under Supreme Court Rule 615(b)(2), which provides:

"Powers of the Reviewing Court.  On appeal the reviewing court may:

\*\*\*

22

(2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." Ill. S. Ct. R. 615(b)(2) (eff. Aug. 1999).

The Illinois Supreme Court reasoned that the appellate court should have remanded for sentencing on the two unsentenced convictions because "the appeal was properly before the appellate court with regard to defendant's convictions for armed violence and aggravated battery, and the failure to impose sentences upon the two unappealed convictions had been intimately related to and 'dependent upon' the appealed convictions within the meaning of Rule 615(b)(2)." *Dixon*, 91 Ill. 2d at 353. The court observed that to interpret Rule 615(b)(2) otherwise "could have mischievous consequences." *Dixon*, 91 Ill. 2d at 354. The court explained that had the appellate court vacated both the aggravated battery and armed violence convictions yet refused to remand for resentencing on the unappealed convictions, then "it is conceivable that the crimes could go unpunished." *Dixon*, 91 Ill. 2d at 354.

The distinct factual context of *Dixon* provides no authority for this court to consider the merits of defendant's claim in this case. In *Dixon*, jurisdiction was entertained so that a nonfinal, unsentenced conviction could be reinstated after a greater conviction was vacated. Unlike *Dixon*, defendant's conviction for AUUW has not been reversed and, therefore, we cannot review the unsentenced conviction for unlawful possession of a firearm. See *People v. Ramos*, 339 Ill. App. 3d 891, 906 (2003) ("we believe that *Dixon* must be narrowly construed as not sanctioning the *** review of unappealed and unsentenced convictions when the greater offense has not been reversed and vacated"); see also *People v. Sandefur*, 378 Ill. App. 3d 133, 134

(2007) (appellate court affirmed conviction for greater offense and had no reason to reach issue of merged conviction). Therefore, we do not reach defendant's constitutional challenge to the unlawful possession of a firearms statute.

### III. CONCLUSION

For the above reasons, we affirm defendant's conviction and sentence under the AUUW statute.

Affirmed.

JUSTICE NEVILLE, dissenting:

The majority ignores the precedential effect of the United States Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008), and ignores the judicial *dictum* rule which obligates this court to apply the *Heller* reasoning to the facts in this case. Accordingly, I respectfully dissent because I think this court is required to follow *Heller* and should hold that the AUUW statute violates the second amendment to the United States Constitution.

### Standard of Review

I agree with part of the majority's analysis. I agree that only the 2008 version of the AUUW statute applies in this case. I also agree that neither strict scrutiny nor a rational basis test should govern the constitutionality of restrictions on the right to bear arms (see *Heller*, 554 U.S. at ___ n.27, 128 S. Ct. at 2817 n.27), and therefore this court should apply some form of intermediate scrutiny to determine whether the AUUW statute violates the second amendment. See *United States v. Miller*, 604 F. Supp. 2d 1162 (W.D. Tenn. 2009); *United States v. Pettengill*, 682 F. Supp. 2d 49, 55 (D. Me. 2010). The majority's adoption of an intermediate scrutiny standard of review directly

1-09-0840

conflicts with the rational basis standard of review applied in *People v. Dawson*, 403 Ill. App. 3d 499, 510 (2010), and *People v. Williams*, No. 1-09-1667, 2010 Ill. App. LEXIS 1284 (Ill. App. Dec. 2, 2010). It should be noted that those courts held that the AUUW statute did not violate the second amendment because the legislature had a rational basis for adopting the AUUW statute. See *Dawson*, 403 Ill. App. 3d at 510; *Williams*, No. 1-09-1667, slip op. at 5-6. 2010 Ill. App. LEXIS 1284 at 8-9.

In my opinion, under the appropriate intermediate scrutiny standard of review, "[t]he State must assert a substantial interest to be achieved by restrictions" on the constitutional rights at issue, and "the regulatory technique must be in proportion to that interest." *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 564 (1980). Supreme Court decisions "require *** a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served.' " *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989)(quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)). Accordingly, I would apply the aforementioned test to statutes that restrict the right to bear arms.

Second Amendment

The *Heller* Court provides considerable guidance on the nature of the right the second amendment protects and on the kinds of restrictions the Court considers permissible. The majority here gives short shrift to the *Heller* Court's analysis, treating all but its final holding, concerning a statute that banned handgun possession in the home, as *dicta*. But, as our supreme court explained in *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993), judicial *dicta* should usually carry dispositive weight

26

in an inferior court. See also *People v. Williams*, 204 Ill. 2d 191, 206 (2003).

The *Heller* Court explained that the second amendment protects the right to "bear arms" (U.S. Const., amend. II), which it defined as the right to " ' "wear, bear, or carry [arms] *** upon the person or in the clothing or in a pocket, for the purpose *** of being armed and ready for offensive or defensive action in a case of conflict with another person." ' " *Heller*, 554 U.S. at ___, 128 S. Ct. at 2793 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting, joined by Rehnquist, C.J. and Scalia and Souter, JJ.), quoting Black's Law Dictionary 214 (6th ed. 1998)). Thus, the second amendment, at its core, protects the right of every citizen to have firearms available to protect himself or herself in case a conflict with another person arises. *Heller*, 554 U.S. at ___, 128 S. Ct. at 2793. The second amendment itself does not restrict the right to keep and bear arms to the home, and nothing in the *Heller* Court's reasoning restricts this right to the home. U.S. Const., amend. II; *Heller*, 554 U.S. at ___, 128 S. Ct. at 2793.

As some commentators have noted, conflicts frequently arise outside the home, and citizens often need to defend themselves when such conflicts arise:

"Often, people need to defend themselves against robbers, rapists, and killers outside and not just in the home. Two-thirds of all rapes and sexual assaults, for instance, happen outside the victim's home, and half happen outside anyone's home. The percentages are even greater for robberies and assaults." Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1518 (2009).

AUUW Statute

The AUUW statute restricts the right to use arms for self-defense by banning every citizen from carrying a loaded, uncased and accessible firearm when the citizen is anywhere other than on his land, in his abode, in his legal dwelling, or at his fixed place of business. 720 ILCS 5/24-1.6 (West 2008). In my view, this court should determine the constitutionality of this restriction by looking to the substantial state interests the statute advances, and by assessing the reach of the restriction to determine whether the restriction fits proportionally with the interest served. See *Central Hudson*, 447 U.S. at 564.

The majority attempts to explain the purpose of the AUUW statute, but I find the majority's explanation here less persuasive than the explanation given in *People v. Marin*, 342 Ill. App. 3d 716 (2003). The *Marin* court reviewed the legislative history of the AUUW statute and found:

"The overall purpose of the aggravated UUW statute is to protect the public from gun violence. [Citation.] *** [T]he legislature intended to prevent anyone from carrying a loaded or unlicensed weapon in order to protect the general public and police enforcement officers. ***

***

*** [T]he legislature's purpose in enacting the statute was to prevent any person from carrying a loaded weapon on his person or in his vehicle due to 'the inherent dangers to police officers and the general public.' [People v.] Grant, 339 Ill. App. 3d [792,] 806 [2003] ***. ***

* * *

*** [The legislature aimed] to prevent situations where no criminal intent

28

existed, but criminal conduct resulted despite the lack of intent, *e.g.,* accidents with loaded guns on public streets or the escalation of minor public altercations into gun battles or, as the legislature pointed out, the danger of a police officer stopping a car with a loaded weapon on the passenger seat. *** [T]he underlying activity of possessing or transporting an accessible and loaded weapon is itself dangerous and undesirable, regardless of the intent of the bearer since it may lead to the endangerment of public safety." *Marin*, 342 Ill. App. 3d at 723-27.

Thus, the AUUW statute serves the State's substantial interests in improving public safety and reducing gun violence. The constitutionality of the AUUW statute turns on whether the statutory limitation on the constitutional right fits proportionally with the interest served.

The *Heller* Court gave examples of some restrictions on the right to bear arms which would comport with the second amendment:

"[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at ___, 128 S. Ct. at 2816-17.

Such restrictions fit proportionally with the interests the statute serves, as the statute restricts the right to use guns for self-defense by persons who present special dangers to the public, or in especially sensitive places, where the use of guns would present a special threat to the people in those places. The list in *Heller* makes little sense if the second amendment permits the States to ban

all firearm possession outside the home. See Michael C. Dorf, *Does Heller Protect a Right to Carry Guns Outside the Home?* 59 Syracuse L. Rev. 225, 227-28 (2008). The *Heller* Court cited with approval nineteenth century decisions upholding the right to carry firearms openly, and emphasized that the framers of the Constitution valued firearms for use in self-defense and hunting outside the home. *Heller*, 554 U.S. at ___, 128 S. Ct. at 2801, 2809; 59 Syracuse L. Rev. at 227.

The AUUW statute, which broadly bans the carrying of loaded, accessible firearms outside of one's home and fixed place of business, defeats the core right the second amendment protects, the right to use firearms for self-defense, whenever the need for self-defense arises outside of the home or a person's fixed place of business. One commentator notes that statutes like the Illinois AUUW statute "essentially deny people the ability to defend themselves in public places using firearms - the tools that are likely to be the most effective for self-defense, and that the criminal attackers are already likely to possess." 56 UCLA L. Rev. at 1520. The criminalization of all gun possession outside of the home may improve safety for some of the public, but it could have severe detrimental effect on the safety of those too weak to protect themselves without guns, or those who confront criminals with guns.

I would find that, under the reasoning of *Heller*, the AUUW statute sweeps with breadth disproportionate to its legitimate purpose of improving public safety by reducing gun violence. I would also find that the AUUW statute is unconstitutional on its face, and therefore I would vacate Aguilar's conviction for violation of the AUUW statute.

Unlawful Possession of a Firearm

Because I think this court is required by the judicial dictum rule to follow the reasoning of

30

*Heller* and vacate Aguilar's conviction for violating the AUUW statute, I would find that the court has jurisdiction to review Aguilar's unsentenced conviction for violation of the statute that bans persons under 18 years of age from possessing concealable firearms (720 ILCS 5/24-3.1 (West 2008)). See *People v. Dixon*, 91 Ill. 2d 346, 353 (1982); Ill. S. Ct. R. 615(b)(2). I would also find that the statute that bars minors from possessing concealable firearms is constitutional, under the reasoning of *United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009). In *Rene E.*, the trial court found Rene E. guilty of violating a federal law (18 U.S.C. §922(x)(2006)) that severely restricted the rights of minors to possess handguns. The United States Court of Appeals for the First Circuit noted that Congress enacted the law to prevent sales of guns to " 'emotionally immature [persons and to] *** minors prone to criminal behavior.' " *Rene E.*, 583 F.3d at 13 (quoting Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, §901(a)(6), 82 Stat. 197, 225-26 (1968)). The court found the statutory restriction on the rights of minors consistent with the intentions of the founders. *Rene E.*, 583 F.3d at 15-16. The court concluded that the federal statute did not violate the Second Amendment. *Rene E.*, 583 F.3d at 16; see also 56 UCLA L. Rev. at 1508-13.

*Rene E.* is very persuasive authority for determining the constitutionality of the unlawful possession of a firearm statute. The Supreme Court "[has] recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing." *Bellotti v. Baird*, 443 U.S. 622, 634 (1979).

The statute that bans possession of concealable firearms by persons under 18 years of age

serves the substantial governmental goal of keeping concealable handguns out of the hands of persons whose immaturity leaves them incapable of the kind of impulse control and thoughtful judgment needed for responsible use of firearms. The statute that applies to minors also helps reduce violence of teenaged members of street gangs. See *In re S.M.*, 347 Ill. App. 3d 620, 625 (2004). The ban reasonably fits the governmental interest. The citizen's right to bear arms depends on the citizen's ability to make critical decisions in an informed, mature manner, and younger citizens very often lack that ability. See *Bellotti*, 443 U.S. at 634. Setting the bar for the full right to bear arms at the age of majority comports with longstanding enforcement of many constitutional rights. See *Bellotti*, 443 U.S. at 634. Moreover, the statute permits minors to have access to guns for certain purposes, self-defense in the home and hunting, as long as the minor cannot readily conceal those guns on his person. See *Rene E.*, 583 F.3d at 16. I would hold that the statutory restriction on the rights of minors, banning them from possessing concealable firearms, does not conflict with the second amendment.

Finally, I would address Aguilar's argument that the unlawful possession of a firearm statute conflicts with the Illinois Constitution of 1970. In *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 509-11 (1984), our supreme court held that an ordinance completely banning handguns did not violate the Illinois Constitution. According to the *Kalodimos* court, the Illinois Constitution does not make handgun possession a fundamental right. Courts should apply the rational basis test to determine whether gun control legislation violates the Illinois Constitution. This court must uphold the validity of the law unless the party challenging the law shows that it does not bear a rational relationship to a legitimate governmental interest. I would find that the statute barring minors from

possessing concealable firearms bears a rational relationship to the government's legitimate interest in reducing gun violence, especially when that violence involves youths in street gangs. See *Marin*, 342 Ill. App. 3d at 723-24. The ban on minors' possession of concealable firearms comports with the Illinois Constitution. I would affirm the conviction for violating the unlawful possession of a firearm statute, because Aguilar was not yet 18 years old when he possessed a concealable firearm. Therefore, I would remand the case for sentencing on the count for unlawful possession of a firearm.

CONCLUSION

I would apply a form of intermediate scrutiny to statutory restrictions on the right to bear arms, and I would review such restrictions to determine whether they serve a substantial governmental interest, and whether the restriction on the right is proportional to the interest served. I would find that, under the reasoning of *Heller*, the complete ban on possession of loaded firearms outside of the home cuts too broadly because it infringes upon the constitutional right to keep and bear arms for self-defense whenever one ventures from the home, and I would find that the infringement is disproportional to the interest served of reducing gun violence. Therefore, (1) I would vacate Aguilar's conviction for violating the AUUW statute; (2) I would find that the United States and Illinois Constitutions permit Illinois to ban minors from possessing concealable firearms, and I would affirm Aguilar's conviction for violating the unlawful possession of a firearm by a minor statute; and (3) I would remand for imposition of sentence on the conviction for violating the statute which prohibits the possession of a concealable firearm by a person under the age of 18.